IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHEN CHRISTOPHER NOVATNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:19-cv-00821 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| F/N/U ELROD, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the Court is a pro se complaint for alleged violation of civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1), filed by Stephen Christopher Novatne, a former inmate of the Rutherford County Adult Detention Center (RCADC) in Murfreesboro, Tennessee.[1] Plaintiff also filed an amended application to proceed in forma pauperis (IFP) (Doc. No. 6), which the Court will grant by Order entered contemporaneously herewith. The complaint is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e, and for ruling on Plaintiff's pending motions, including motions for the appointment of counsel (Doc. Nos. 7, 13, and 16).

**INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A

---

[1] Plaintiff has notified the Court that he was recently relocated to a facility of the Tennessee Department of Correction. (Doc. Nos. 22, 23.)

provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color

of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that, in early June 2019, Officer Cairo and Sergeant Edgill took his bedding and other property from his cell while he was in the shower. (Doc. No. 1 at 6.) Prior to Plaintiff getting in the shower, Edgill told him that he "wouldn't ever get out of seg[regation] filing all these grievances and threatening lawsuits." (*Id.*) After leaving the shower and arriving back in his cell wearing handcuffs, Plaintiff asked for his property, and Defendants Cairo and Edgill slammed him to the ground "for protesting and trying to . . . get an explanation[.]" (*Id.*) Plaintiff alleges that he was injured in this altercation. (*Id.*)

On June 9, 2019, when Officers Batsell and Flipovich were on duty, Plaintiff was cuffed and brought to the "ODR-out-door rec area" where he was assaulted "in retaliation to earlier that week and lawsuit[.]" (*Id.* at 7.) He alleges that his arms were pulled through the pie flap of the recreation room door and that he was tackled and slammed to the concrete. (*Id.*) While Batsell and Flipovich were restraining him on the ground, Lt. Elrod kicked him and kneed him in the face at least three times, then dropped his knee and body weight on Plaintiff's neck and head. (*Id.*) Plaintiff was injured and taken to medical, and on the way he was "slammed very forcefully" into the corners of walls despite the fact that he was not resisting. (*Id.*) When he arrived at medical, Plaintiff alleges that "Rudd Medical did nothing, didn't take picture of my face, did no follow ups,

3

absolutely nothing," even though they had knowledge of his prior medical history of chronic pain and disc injuries. (*Id.* at 8.)

Plaintiff alleges that, on an unknown date, Officer J. Miles left the pod with Plaintiff's legal paperwork to make copies for him and was gone for longer than 24 hours. (*Id.*) When Miles was located by her supervisor and ordered to return Plaintiff's paperwork, she brought the paperwork back without any copies, claiming that she did not make copies and never should have left the pod with Plaintiff's legal documents because she failed to obtain a signed release from him authorizing the copies. (*Id.*) However, Miles admitted that she showed Plaintiff's documents to her supervisor and discussed the documents with him, despite her failure to obtain Plaintiff's written permission. (*Id.*) Miles is also alleged to have refused notary services for Plaintiff's pauper forms. (*Id.* at 10.)

Plaintiff sues Officers Cairo, Batsell, Flipovich, Elrod, Edgill, and Miles in their official and individual capacities. (*Id.* at 2–3.) He also names the RCADC as a Defendant. (*Id.* at 2.) As relief, Plaintiff seeks to be awarded medical and psychiatric treatment by providers outside of the RCADC; compensation for any further treatment he receives once he is released; apologies from all Defendants; and a transfer to a different facility. (*Id.* at 9.)

IV. ANALYSIS

As an initial matter, the RCADC is not a proper defendant under Section 1983, which creates a cause of action against "[e]very person" who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. "For purposes of § 1983, 'person' includes individuals and 'bodies politic and corporate.'" *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978)). A county jail "is a place; it is not a 'person' that can be

4

sued under 42 U.S.C. § 1983." *Tucker v. Salandy*, No. 3:17-cv-00671, 2017 WL 2438401, at *2 (M.D. Tenn. June 6, 2017).

Moreover, in suing county jail officials in their official capacities, Plaintiff has effectively sought relief against their employer, Rutherford County. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they represent"). While Rutherford County is a proper defendant under Section 1983, municipal liability, "irrespective of whether the relief sought is monetary or prospective," may only be established if Plaintiff's harm was caused by the execution of a county policy or custom. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 39 (2010); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (to hold municipality liable, plaintiff must allege a direct causal link between a policy or custom of the municipality and the alleged constitutional violation). Plaintiff does not attribute any harm he allegedly suffered to any Rutherford County policy or custom.

As to Plaintiff's claims against Defendants in their individual capacities, colorable excessive force claims are asserted against Cairo, Edgill, Batsell, Flipovich, and Elrod. When such claims are asserted by convicted prisoners under the Eighth Amendment, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). However, because Plaintiff states that he was a pretrial detainee at the time of this incident (Doc. No. 1 at 1), his excessive force claims must be analyzed under the Fourteenth Amendment, pursuant to which he needs to demonstrate "only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding that claim of excessive force in violation of 14th Amendment Due

Process Clause does not have subjective component because, e.g., "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'").

Plaintiff alleges that Cairo and Edgill slammed him to the ground while handcuffed in response to his protests and questions over the confiscation of his bedding and property. He alleges that Batsell and Flipovich pulled his arms through a pie flap, tackled him, and slammed him to the ground, and then proceeded to hold him down while Elrod kicked him, kneed him in the face, and dropped his knee and body weight on Plaintiff's neck and head. (Doc. No. 1 at 6–7.) Plaintiff has adequately alleged that these uses of force were unreasonable and has therefore stated nonfrivolous claims of excessive force claims against these Defendants.

While Plaintiff also alleges that Cairo and Edgill referred to his grievance and lawsuit filings keeping him in segregation, and that Batsell, Flipovich, and Elrod's use of force was in retaliation for "earlier that week and lawsuit" (*id.* at 6–7), these allegations lack the specificity required to support a plausible claim of First Amendment retaliation at this time, even liberally construing the complaint in Plaintiff's favor. *See Iqbal*, 556 U.S. at 678 (stating that pleading offering only "labels and conclusion" or "naked assertions devoid of further factual enhancement" fails to state a plausible claim to relief).

Moreover, Plaintiff's allegation that Rudd Medical failed to provide any treatment for the injuries he sustained does not support a colorable claim of deliberate indifference to serious medical needs. Rudd Medical is not a named Defendant, nor is any policy of that corporate entity alleged to have driven the denial of treatment here. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (stating that, like municipality, liability of corporate provider of prison medical services "must also be premised on some policy that caused a deprivation of [inmate]'s Eighth Amendment rights").

6

Furthermore, Plaintiff's claims against Defendant Miles, concerning her review without Plaintiff's permission of his legal papers she had been given to copy and her refusal to provide notarization of pauper forms, are not viable under Section 1983. The Sixth Circuit has held that claims of seizing and viewing of legal materials must be based on "some allegation that the prison official's conduct amounted to denial of access to the courts or some form of censorship of speech." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (citing *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001) ("Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or 'hindered his efforts to pursue a legal claim.'")). Similarly, a deprivation of notary services without a corresponding allegation of injury to Plaintiff's ability to access the courts does not state a viable Section 1983 claim. *See Thomas v. Rochell*, 47 F. App'x 315, 318 (6th Cir. 2002) (affirming summary judgment against inmate who "suffered no actual prejudice or legal injury because of his inability to obtain notary service or a copy of his trust fund account" in support of pauper application, since district court granted application). Plaintiff has not alleged that he suffered any such injury because of Defendant Miles's actions, and even if he had, any claim against Miles would be misjoined in this action, which otherwise presents claims of excessive force that are entirely unrelated to Plaintiff's allegations against Miles. *See Dykes v. Benson*, No. 1:18-cv-664, 2018 WL 3708054, at *5 (W.D. Mich. Aug. 2, 2018) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees [under the PLRA].") (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Defendant Miles will be dismissed from this action.

Finally, the Court notes that Plaintiff's current complaint does not contain a request for relief explicitly related to the use of force by Cairo, Batsell, Flipovich, Elrod, and Edgill. He seeks medical and psychiatric treatment by providers outside of the RCADC; compensation for any further medical treatment he receives once he is released; apologies from all Defendants; and a transfer to a different facility. (Doc. No. 1 at 9.) The Court questions whether such requests for injunctive relief were otherwise proper. S*ee Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (concluding that "the district court exceeded its equitable power when it ordered [defendant] to apologize"); *Fisher v. Goord*, 981 F. Supp. 140, 176 (W.D.N.Y. 1997) ("It is well settled that a prisoner has no constitutional right to serve a sentence in any particular institution or to be transferred or not transferred from one facility to another.") (citing, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 249–50 (1983)). But even if they were, the Defendants named above are not the proper parties "in terms of the granting of such relief." *Moore v. Dahl*, No. 106-cv-096, 2006 WL 3761991, at *3 (D.N.D. Dec. 20, 2006). Nevertheless, at this initial stage the Court will liberally construe Plaintiff's request for compensation for future medical needs as a request for damages related to the use of force against him by Defendants Cairo, Batsell, Flipovich, Elrod, and Edgill. *See* Styles v. *Dep't of Veterans Affairs*, No. 2:16-CV-00001-JRG, 2016 WL 10490547, at *1 (E.D. Tenn. Sept. 30, 2016) (denying as futile motion to amend pro se request for relief to include "medical bills" resulting from injury and "pain and suffering," because "[l]iberally construing his prayer for relief, Styles has already pleaded damages for pain and suffering, as well as for medical bills associated with corrective surgery" by "arguing for relief . . . for injuries sustained [during medical procedure] and for injuries inflicted by a coworker").

## MOTIONS TO APPOINT COUNSEL

An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court. *Id.* at 604. In making the determination of whether the circumstances warrant the appointment of counsel, courts are to consider the type of case presented and the abilities of the plaintiff to represent himself. *Id.* at 606 (citations omitted). Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." *Id.* (internal quotation marks and citation omitted).

Here, the factual and legal issues presented are not unusually complex, and Plaintiff has demonstrated the ability to plead his case cogently. Exceptional circumstances justifying appointment of counsel are therefore not present in this case. Plaintiff's motions (Doc. Nos. 7, 13, and 16) will be denied without prejudice to renewal in the future if warranted by the progress of the litigation.

## CONCLUSION

For the reasons set forth above, the Court finds that the complaint states nonfrivolous claims against Defendants Cairo, Batsell, Flipovich, Elrod, and Edgill that will proceed for further development. Defendants Miles and the RCADC will be dismissed from this action. Plaintiff's motions for appointment of counsel and other pending motions will be ruled on by separate Order.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE